NORTHEAST FRANKLIN CO., APPELLANT, *v.* COOPER ET AL.,
APPELLEES.

[Cite as Northeast Franklin Co. v. Cooper
(1975), 45 Ohio App. 2d 137.]

(No. 75AP-181—Decided May 1, 1975.)

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown
& Newman,* for appellant.

*Mr. George C. Smith,* prosecuting attorney, and *Mr.
Dennis S. Pines,* for appellees.

*Messrs. Gayton, Hammersmith & Harris,* for inter-
venors.

REILLY, J. The facts are not disputed. We quote, for
perspective, the agreed statement of facts, approved by
counsel in the trial court, filed February 21, 1975:

"Agreed Statement of Facts and Answers of Defend-
ants

"For the purposes of the trial herein, all parties to
this action hereby stipulate and agree upon the following:

"1. Northeast Franklin Co. is an Ohio partnership consisting of Dollar Land Development Corporation, an Ohio corporation, and KWPP, an Ohio partnership.

"2. Plaintiff is a taxpayer.

"3. Plaintiff is the owner of property described in Exhibits 'A' and 'B' attached hereto, which were rezoned on October 22, 1974, from a Rural District to a Restricted Suburban Residential (R-2) District and a Limited Suburban (R-4) District.

"4. Plaintiff has a direct interest in the subject matter of this action.

"5. Defendants, Harold M. Cooper, Michael J. Dorrian, and Robert T. Southwick, are the duly elected and acting members of the Board of County Commissioners of Franklin County, Ohio. The defendants, Nelson Lancione, Richard J. Ryan, William H. Schneider, and Jenniev J. Henson, are the duly appointed and acting members of the Board of Elections of Franklin County, Ohio. The defendant, Harold E. Holzworth, is the Director of the Board of Elections of Franklin County, Ohio.

"6. On October 22, 1974, the Board of County Commissioners of Franklin County, Ohio, in Case No. 74-27, adopted a resolution to amend the zoning resolutions and maps of Plain Township, Franklin County, Ohio, to change the zoning on the tract of land owned by the plaintiff containing approximately 180.027 acres more fully described in Exhibits 'A' and 'B' attached hereto, from a Rural District to a Restricted Suburban Residential (R-2) District and a Limited Suburban (R-4) District.

"7. On November 20, 1974, a committee consisting of Cyrus E. Phillips, Paul Breitfeller, Fred Klaer, John Price, and Ellen Walker, caused to be filed with the Board of County Commissioners of Franklin County, Ohio, 11 part-petitions denominated, 'referendum petition.' Copies of the 11 part-petitions are attached hereto as Exhibit 'C'.

"8. The 11 part-petitions denominated 'referendum petition' do not 'request', but 'order', the Board of County Commissioners to place the issue described therein on the ballot for approval or rejection at the next primary or

general election by the electors of the unincorporated area of Plain Township.

"9. Each of the 11 part-petition papers bears the affidavit of the circulator thereof, reading as follows:

" 'Affidavit of Person Soliciting Signatures

" 'The State of Ohio, Franklin County, ss.

" ' ................., being first duly sworn, deposes and says that he is the person who solicited the signatures to the foregoing part petition; that the number of signers to such part petition is. . . .; that to the best of his knowledge and belief each of the signatures contained thereon is the genuine signature of the person whose name it purports to be; that affiant believes that such persons are electors of the unincorporated area of Plain Township; and that they signed such petition with knowledge of the contents thereof; that he witnessed the affixing of every signature; that all signers were to the best of his knowledge and belief qualified to sign.

" 'Signed .......................
                    (Circulator)

" 'Address ...................
                    (Street and Number)
" ...................
                    (City or Village)

" 'Subscribed and sworn to before me, this .........
day of ..................., 1974.
" ...................
                    'Notary Public'

"None of the part-petition papers bears the words, 'statement' of the circulator, 'made under penalty of election falsification'.

"10. None of the part-petition papers bear in bold face capital letters the words, 'The Penalty For Election Falsification Is Imprisonment For Not More Than Six Months, Or A Fine Of Not More Than One Thousand Dollars, Or Both', as set out by § 3501.38(J), Revised Code.

"11. The circulator's affidavit attached to each part-petition circulated by John L. Price, Paul F. Breitfeller, Urey Raymond Wiggins, Edith H. Klaer, and Ellen E,

Walker recites that 'he witnesses the affixing of every signature' on the part-petition to which the affidavit is attached. The part-petition circulated by John L. Price contains the signature of John L. Price; the part-petition circulated by Paul F. Breitfeller contains the signature of Paul F. Breitfeller; the part-petition circulated by Urey Raymond Wiggins contains the signature of Urey Raymond Wiggins; the part-petition circulated by Edith H. Klaer contains the signature of Edith H. Klaer; the part-petition circulated by Ellen E. Walker contains the signature of Ellen E. Walker.

"12. The circulator's affidavit attached to each part-petition recites that it was signed by persons with knowledge of the contents thereof. None of the part-petitions have a copy of the zoning map or plat attached.

"13. The defendant, Board of County Commissioners of Franklin County, Ohio, pursuant to resolution adopted January 22, 1975, a copy of which is attached hereto as Exhibit 'D', certified to the defendant, Board of Elections of Franklin County, Ohio, the question of the rezoning of a tract of land containing approximately 180.027 acres situated in Plain Township, from a Rural District to a Restricted Suburban Residential (R-2) District and a Limited Suburban (R-4) District for rejection or approval by the electors of the unincorporated area of Plain Township under the election laws of this State at the next primary or general election.

"14. The defendant, Board of Elections, will, unless enjoined, submit the question of the rezoning of the afore-said tract of land containing approximately 180.027 acres situated in Plain Township from a Rural District to a Restricted Suburban Residential (R-2) District and a Limited Suburban (R-4) District for rejection or approval by the electors of the unincorporated area of Plain Township under the election laws of this State at the next primary election.

"15. The total vote cast for all candidates for governor in the unincorporated area of Plain Township, Franklin County, Ohio, at the general election on November 5, 1974, was 1251.

"16. Public monies in the approximate amount of $200 per precinct within the unincorporated area of Plain Township, Franklin County, Ohio, of which there are four precincts, will be expended in submitting the referendum on the zoning resolution adopted on October 22, 1974, in Case No. 74-27 by the Board of County Commissioners of Franklin County, Ohio.

"17. The defendants deny all other allegations of the complaint."

Subsequently, on April 24, 1975, the trial court rendered the following decision and entry:

"The present action seeks to enjoin referendum election on a zoning resolution as to a 180.027 acre tract in Plain Township, Franklin County, Ohio. The case has been submitted for decision upon stipulation of certain facts. Upon consideration thereof, together with the briefs of counsel, the Court makes the following findings.

"1. As to the first claim of invalidity, the fact that the petition ordered the Board of County Commissioners, as distinct from 'requesting,' is of no consequence.

"2. As to the second claim, Section 3501. 38 (E), Ohio Revised Code, the language, 'made under penalty of election falsification', imposes such penalty as to any false statements, but does not require that specific language to be included in the petition. Further, certification as an 'affidavit' or 'statement' is a difference without a distinction.

"3. As to the third claim, the notice language used is warning of possible criminal penalties and meets the statutory requirements.

"4. The fourth challenge claim invalidity of the entire part-petition where the circulator's name also appears as a signator. Such does not invalidate the entire document, but merely that person's signature.

"5. As to the last claim of Plaintiff, the full text of the Commissioner's resolution, as included in the part-petitions, is sufficient information to the electors of the issue presented.

"Cases cited by Plaintiff are distinguishable on the facts. Plaintiff's contentions in the instant case go to form and not substance.

"It is, therefore, Ordered, Adjudged and Decreed that the Complaint be dismissed, at the costs of Plaintiff."

Whereupon, plaintiff perfected this appeal, and offered the following assignments of error:

"I. The trial court erred in finding that the fact that the so-called 'referendum petition' orders rather than requests, as required by §303.12, Revised Code, the Board of County Commissioners to place the issue on the ballot for approval or rejection is of no consequence.

"II. The trial court erred in finding that the so-called 'referendum petition' meets the requirements of §3501.38, Revised Code, and, hence, is legally sufficient and valid."

We, of course, recognize that the rule of strict construction must be applied in this case. This rule, however, is modified by the concept of reasonability, assuming there is no issue of bad faith, which the above quoted agreed facts do not suggest. Moreover, it is fundamental that a relatively miniscule group of people may not haphazardly place issues on the ballot, and, in effect, usurp the functions of elective officials. Nonetheless, the essence of the referendum principle is to allow the voters to have a direct impact upon their own local concerns. This principle was elucidated by Judge Zimmerman, in *State, ex rel. Sharpe,* v. *Hitt* (1951), 155 Ohio St. 529, at page 535, when he wrote:

"This and other courts have declared that constitutional, statutory or charter provisions for municipal initiative or referendum should be liberally construed in favor of the power reserved so as to permit rather than preclude the exercise of such power, and the object clearly sought to be attained should be promoted rather than prevented or obstructed. *State, ex rel. City of Middletown,* v. *City Comm. of City of Middletown,* 140 Ohio St., 368, 44 N. E. (2d), 459; 62 Corpus Juris Secundum, 870, Municipal Corporations, Section 451 (b).

"It is interesting to note that neither the Constitution of Ohio nor the statutes place any definite limitations on the use of the initiative. And the obvious purpose of the initiative as it affects municipalities is to reserve to the

people of those municipalities the right to exercise their inherent or political power over the council or other legislative body as to local legislation. * * *''

The foregoing case, to be sure, differs in its facts, but it cannot reasonably be held that any deviation from the precise letter of the law is fatal. This is particularly significant when the circulators and signers of petitions are laymen, presumably not especially trained in the special facets of the law. We reiterate that the issues herein are not essentially concerned with substance, but relate to form. Moreover, there is no issue whatever of intentional false statement. The root is simply mistake or human error.

Thus, we specifically find that the trial court did not commit reversible error by determining that the distinction between the words ''order'' and ''request'' was not material in its interpretation of R. C. 303.12. The matter was, in fact, presented to the commissioners, which was the real issue involved. Moreover, the witness requirement is that one actually see another sign a petition. This was done. Furthermore, if a circulator is also a petition signer, the result is to invalidate that signature, not the entire petition.

We recognize that a map was not attached to the referendum. The record, however, does not indicate anyone was misled concerning the property description or location. Therefore, such omission, in this case, was not prejudicial to any of the parties involved. Counsel for plaintiff aptly stresses in his brief that R. C. 3501.38, effective September 27, 1974, reads, in pertinent part, as follows:

''All declarations of candidacy, nominating petitions, or other petitions presented to or filed with the secretary of state or a board of elections or with any other public office for the purpose of becoming a candidate for any nomination or office or for the holding of an election on any issue shall, in addition to meeting the other specific requirements prescribed in the sections of the Revised Code relating thereof, be governed by the following rules:
* * *

''(E) Every petition paper shall bear the [affidavit]

STATEMENT of the circulator MADE UNDER PENAL-
TY OF ELECTION FALSIFICATION that he witnessed
the affixing of every signature, that all signers were to the
best of his knowledge and belief qualified to sign, and
that every signature is to the best of his knowledge and
belief the signature of the person whose signature it pur-
ports to be.

" '(J) ALL DECLARATIONS OF CANDIDACY,
NOMINATING PETITIONS, OR OTHER PETITIONS
UNDER THIS SECTION SHALL BE ACCOMPANIED
BY THE FOLLOWING STATEMENT IN BOLD FACE
CAPITAL LETTERS: THE PENALTY FOR ELEC-
TION FALSIFICATION IS IMPRISONMENT FOR
NOT MORE THAN SIX MONTHS, OR A FINE OF NOT
MORE THAN ONE THOUSAND DOLLARS, OR
BOTH.' "

The statement of facts shows that each of the eleven
part-petition papers includes the affidavit of the circula-
tor, but they do not contain the exact words of the present
statute, involving falsification. At first glance, this appears
as a material defect. The previous statute, however, prior
to amendment, in relevant part, reads as follows:

"(E) Every petition paper shall bear the affidavit
of the circulator that he witnessed the affixing of every
signature, that all signers were to the best of his know-
ledge and belief qualified to sign, and that every signa-
ture is to the best of his knowledge and belief the signa-
ture of the person whose signature it purports to be."

Thus, the prior law required an affidavit. The current
law does not include such a requirement. Thus, the old
law actually required a higher standard—specifically, a
statement under oath. A false statement under oath is, of
course, perjury, with criminal penalties. (R. C. 3599.36.)
This represents not only a higher standard, but also a great-
er sanction than the present law. In any event, comparing
these sections, it is reasonable to presume that the Gen-
eral Assembly intended that placing a party under oath
constituted a warning, or notice, of an offense. In short,
the oath included notice, and falsity thereunder was per-

jury. The present law requires merely a different form of notice.

Consequently, the trial court did not commit prejudicial error by, in net effect, finding substantial compliance with the notice requirement in this case. It is, to be sure, preferable to include the exact letter of the law. Considering, however, the agreed facts quoted above, particularly stressing that the issues, except for the notice question, involve, essentially, matters of form rather than substance, and emphasizing the absence of any intentional misrepresentation, we find that the trial court's judgment is based upon a reasonable interpretation of the applicable statutes. Therefore, the assignments of error are overruled.

We recognize that construing election statutes necessarily involves public policy; hence, the Supreme Court may well choose to review this decision, especially as it applies to the notice requirement. Notwithstanding, for the foregoing reasons, the judgment of the trial court, in this case, is affirmed.

*Judgment affirmed.*

HOLMES, J., concurs.
McCORMAC, J., dissents.

McCORMAC, J., dissenting. In my opinion, assignment of error two is well taken and the judgment of the trial court should be reversed. I agree that the referendum petitions either actually or substantially comply with the requirements of law, with the exception that the petitions do not bear the statements respecting a penalty of election falsification, as required by R. C. 3501.38 (J). As Justice Herbert pointed out in the case of *Markus* v. *Bd. of Elections* (1970), 22 Ohio St. 2d 197, 199: "Where statutory provisions relative to the submission of a referendum to the voters have not been complied with, that submission may be enjoined."

The majority decision has adopted the rule of strict construction concerning statutory requirements for a referendum petition but, in my judgment, whether strict or

liberal construction rules are adopted, the defect to which I refer is fatal. As part of an election reform law, the General Assembly enacted R. C. 3501.38 (J), and it became effective on September 27, 1974. That statute, applicable to referendum petitions, provides as follows:

"(J) All declarations of candidacy, nominating petitions, or other petitions under this section shall be accompanied by the following statement in bold face capital letters THE PENALTY FOR ELECTION FALSIFICATION IS IMPRISONMENT FOR NOT MORE THAN SIX MONTHS, OR A FINE OF NOT MORE THAN ONE THOUSAND DOLLARS, OR BOTH."

The stipulated facts indicate that that provision was not contained on the referendum petition but instead the petition contained the following words outlined in a red box:

"NOTICE

"Whoever knowingly signs this petition more than once, signs a name other than his own, or signs when not a legal voter, is liable to prosecution."

As is noted, the actual notice contained on the referendum petitions, which were filed with the board of county commissioners on November 20, 1974, almost two months after R. C. 3501.38 (J) became effective, deviates from the specific and mandatory statutory requirements in two respects: first, the warning language is in small print, rather than in bold face capital letters; second, the notice actually given merely refers to liability to prosecution, rather than the specific penalty of imprisonment for not more than six months or a fine of not more than one thousand dollars or both.

The trial court's finding as to the claim that this deviation voided the petitions was that "the notice language used is warning of possible criminal penalties and meets the statutory requirements." The required statutory language is mandatory and express. The trial court and the majority decision seek, by rule of construction, to construe this specific requirement of the legislature into only a general warning of possible prosecution. It would seem that the

intent of the General Assembly was to provide a very express warning, fully set out in bold capital letters, to deter possible signers from signing in violation of the law. An argument that the method used by petitioners substantially complies with the express requirement is merely conjecture. No one, at least based on the evidence stipulated in this case, is able to say that the warning actually given serves the same deterrent purpose as the warning expressly required by the General Assembly. To hold otherwise is, in effect, to ignore the express statutory language and to say that the General Assembly merely required a warning of prosecution.

Consequently, in my opinion, the petitions are fatally defective and the board of elections should be enjoined from submitting the question of the rezoning of the affected tract of land for rejection or approval at the primary election on June 3, 1975.